Our second case for this morning is Paula Williams v. Office of the Chief Judge of Cook County, Illinois and others. So we'll hear from Mr. Piper when he's ready. May it please the Court, I'm Jonathan Piper, here for Paula Williams, who was the plaintiff in the trial court and the appellant here. There are several claims here, but I'd like to start by focusing on the workers' compensation retaliation claim, because there not only was the court wrong to grant summary judgment for the defendants, but in fact should have granted partial summary judgment in Ms. Williams' favor on liability. So do you recognize a difference in principle between firing somebody or letting them go based on your acceptance of one medical report versus another on the one side, and on the other side letting somebody go because they don't keep the human resources people notified about their status? Not where the notification requirement derives causally from the workers' compensation situation. So you think in the letter of July 26, 2011, the golden males, Ms. Williams, saying, you know, we had this December IME and you need to come back to work on August 2 and let me know if you have any questions. You think that saying to her, let me know, and then when she doesn't let her know, letting her go on that basis is somehow workers' comp discrimination? Absolutely. In fact, the Grabs case is a pretty analogous situation out of the Illinois appellate court. But what if they never know? I mean, for all they know, her personal physician has changed his mind and she's okay to go back August 2. First of all, that's not accurate. There was plenty of information that the claims adjuster had and their state's attorney had. They all knew about the dispute. So basically their defense is, well, we weren't following what was going on in the workers' comp case. But what their attorney knew is imputed to them. They can't say, well, you talked to my attorney, you didn't talk to me. The law doesn't permit that. What the state's attorney knew is imputed to the client. Yeah, but, you know, I guess I have a lot of trouble understanding, actually, why she just doesn't, you know, shore up her case by giving Ms. Golden a phone call and say, look, you know, I'm just going to make sure you're aware that we have a difference of opinion about when I'm going to be ready to get back to work. At which point all of the cases that you're talking about, it seems to me, would be triggered. Right. Well, she wasn't trying to prepare a retaliation case. She was working with her attorney to negotiate her return to work date. So did her attorney instruct her to keep them in the dark? He told her he would take care of it with the state's attorney. He says sometimes if the worker is ready to go back to work, he'll just tell them to go back to work, but usually he works it out with the state's attorney, which, in fact, is what he did here. The problem is that she was fired in the meantime. But let me go back to the Grabs case, because I think if you look at that, you'll see that what I'm saying is actually the law in Illinois. It's not just, it's clear in Grabs. What happened in Grabs was the workers were out on comp leave, then they got the IME, and at that point they changed the computer coding so that the workers were put in the category where if they didn't show up to work for three days, they'd be terminated. Three days later, or shortly thereafter, they were terminated because they didn't return to work. And the appellate court said that if that's what happened, they'd be entitled to summary judgment. But in your brief, Grabs is a case where the holding is that the employer can't rely solely on the IME, and I'm trying to tease out whether that's what happened here or whether it's failing to explain that there's a contest about the IME. I think if you read the Illinois appellate decisions, you'll see that there isn't a material difference. If the failure to return to work arises, the requirement to return to work, if that arises out of a workers' comp situation. Does that make any sense to you as a matter of policy, that some person can just sit there completely silent and leave the employer in the dark and then still tell the employer they can't assume that the person isn't coming back? Yeah, the Illinois appellate courts think that is a great idea for policy. They said in Grabs, we want to make it. I'm sure I shared that opinion. Right, but that's the Illinois law. In Grabs, they said, we want to make this clear to employers. You can't fire somebody for something that's causally related to their workers' comp claim. In other words, they know employers do this. They said you can't do it. Stop it. But causally related. Right, and the Illinois appellate court also says if a first cause causes a second cause that causes a result, the first cause is the cause of the result. If her IME and her workers' comp situation leads to her being ordered to return to work and then she's fired because she didn't return to work, the comp situation is the cause of her termination. That's the law, and it makes perfect sense. Otherwise, you're putting the employee in a situation where they have to choose between returning to work. No, you're putting the employee in a situation where she has to make a phone call in response to the letter that she gets from somebody like Golden, which is exactly what the other woman did, your comparator person. Yeah, but she was given a number of breaks. No, I understand, but she kept the employer in the loop, you know, so she wasn't really quite the same. Well, excuse me, Your Honor. Telling your opposing party's lawyer something isn't keeping them in the loop. I mean, it's sort of ridiculous to me to say that telling the state's attorney who is handling the case for the defendant something isn't good enough. If the state's attorney isn't keeping his client abreast, that's not Ms. Williams' problem. That's their problem, and that knowledge is imputed to them. They can't say you just told our attorney. And I knew everything about comp. This is not at all like Beatty where the guy that terminated her, the person in Ms. Golden's position, didn't even know there was a possibility of workers' comp. He didn't know there was an independent medical exam. He didn't know nothing about nothing. He just knew that the guy hadn't shown up to work. That's completely different from the situation here, what was in Beatty. So which defendants do you think we still have before us at this point? At this point, the only defendants that were still in the case were the office of the chief judge and Michael Rowan, who was then the director of the department. I mean, there's also an irony in the office of the chief judge saying, well, we're innocent because we didn't know what the law was, which is basically what's going on here. So let me ask you about your contract theory. You have a theory that Mr. Marzall and Mr. Schwartz, on behalf of their respective clients, make a contract. What is this contract? Is it a refrain from suing in order to settle on a return date? Tell me a little bit more about the contract. There was a claim pending in the Workers' Compensation Commission. So you see this as a settlement agreement that, I mean, you're relying on it. It's an after-the-fact contract, so you're relying on it as evidence of some different oral agreement that happened. Exactly. They had an oral agreement, then they put it in writing and submitted it to the commission. In the meantime, she was fired contrary to what they had agreed to. One element of this alleged agreement was that actually that's at September 7th, not September 6th, as I remember. Right. But the facts taken in light most favorable to Ms. Williams are the state's attorney said, yeah, you don't need to come back to work until September 6th. I'll get it worked out. We'll get it resolved. You'll report to work on September 6th. We're done here. And then he testifies that he has no authority to do that. I mean, he may have said so, but he had no authority, he says. Right. So then you have to look at the evidence to see if that's disputed and a triable issue, and it is triable. And what's your evidence that he does have the authority or that it's at least? Well, first of all, Marcel says this is the way they always do it when it's Cook County. They always negotiate with the state's attorney. He does have the authority to settle the cases. In fact, he's the guy that signed the agreement that they ultimately reached and submitted that to the Workers' Comp Commission representing that she was disabled until September 7th. She wasn't ready to return to work. Right. So he had the authority to do all that, but he didn't have the authority to say that orally before he signed the written agreement. That doesn't make sense, particularly given Mr. Marcel's testimony that they do that all the time. So according to you, it's his job to figure out when she is physically capable of going back to work or to resolve disputes to that effect. Absolutely. His job includes resolving disputes about return to work dates. And you're relying on William's attorney in his deposition when he talked about how he regularly worked that out with the state's attorney's office. Exactly. That plus the fact that the state's attorney is the one that signs the document saying what her return to work date is. And a third fact is kind of the flip side of what we've got with the retaliation, which is, well, the state's attorney never talks to the client. So obviously he's authorized to do this because he does it without even talking to the client. It's not like he goes back to Rose Golden and says, well, I'm thinking September 7th. How does that, you know, can I agree with that? Can I sign this? No, he just signed it. So there's no evidence actually that he goes back to Cook County to get authority. The evidence is the state's attorney does it on their own. Which is actually maybe not the most reassuring description of a lawyer-client relationship, but I guess. Well, there's a footnote where the district court noted that, you know, this right hand doesn't pay any attention to what the left hand is doing is a little odd. So are you making an apparent authority argument? I mean, it sounds like you don't really care if he did have the authority or not. If people like Mr. Marzall thought he had it, and if he behaves as though he has it, that that's enough. Both. I think he does have the authority based on the evidence, and his denial of that can be attacked with the circumstantial evidence, including the practices in the court. I mean, Mr. Marzall named a bunch of other states' attorneys that he's done this with. There's no disputing that evidence. But it certainly is apparent authority if it's not actual authority. And there's an issue for part of the case, at least with the statute of limitations, from this Local Governmental Employees Tort Immunity Act. Well, that only applies. They've only raised that, and the district court only relied on that with respect to the whistleblower. Right, the whistleblower. There are two district court of Illinois, northern district opinions, one saying that that does apply to whistleblower, one saying it does not apply. Neither of which is authoritative. I mean, you would need Illinois authority, or actually that's what you need, Illinois authority. Right. Well, first of all, we would go with the one that said that it doesn't apply. Well, of course, but if they're neither authoritative, I mean, I could guess that. Well, my position would be the only decision, the only legal opinion that was out there on this when she filed her claims was the one saying that that statute of limitations does not apply. So I think if that's going to be reversed, that should not retroactively reach back to bar her claim. You're acting as though it's an authoritative opinion, though. Neither one of them is. They're both federal district courts opining about what state law means, and we actually need to look at what the state law says, number one. We need to look at what the Illinois courts have thought that it meant. But the other argument we have is that even if the statute does apply, she gets around that because she had filed a case in state court that did talk about retaliation. I don't think it specifically cited the Whistleblower Act, but it was pending, and it wasn't totally dismissed out of the Illinois state court until this case had been filed. So we would argue that tolls. Okay. Well, if you want to save a little rebuttal time, you're welcome to do that. Okay. Thank you. Thank you. The only thing I would just add is- Sorry. False alarm is in. I would urge you to look at the specific facts and posture of those three Illinois appellate court cases because there's no way you can say this case falls with Beatty, where the guy that did the firing didn't know anything. And if you look at Grabs, it's exactly the same thing as here, where the IME triggers a change in the person's bookkeeping status towards it goes from being on workers' comp leave to if they don't report or call in. And one other point I'd like to make about the calling in is it's a great question. Well, if she had called in, wouldn't that have solved everything? Or I guess as you put it, wouldn't that have made a better retaliation? Well, if they'd gone ahead and done it. When they said call in, see, my problem is they tell her to do something directly. It's not indirect like in Grabs. And she doesn't do it. So that's a problem. But I asked all of them, well, suppose you'd known about the other doctor's notes. Suppose you'd known her doctor thought she wasn't ready to come back. And all their witnesses said, I don't know, the head guy in the main office said, Well, I probably would have gone with the county doctor. Well, I think you would have had a different case had that happened. But anyway, you've now used up your time. And she did go in the day she thought she was supposed to report and brought all the information. Okay. Your time is now up.  Ms. Hannon. May it please the Court. This was a very simple case. And the reason why Paula Williams was discharged from her employment was simply job abandonment. Well, let me ask you this. Does the office of the chief judge have any written policies about who's authorized to make decisions about an employee's return to work day? Yes, it's in the collective bargaining agreement. And it's in the personnel policies of the office, that the personnel department is the one who has the authorization to return to work. The collective bargaining agreement that was an exhibit to the summary judgment motion also provides that for job abandonment, you can lose your job. Well, what about the role of the state's attorney? And that's such a good point, Your Honor. The state's attorney is a state's attorney for the Industrial Claims Commission. He is a state's attorney for the entire workers' compensation for the entire county. He is not the attorney for the probation department in this case. So there is no doubt, and that's for policy reasons. It makes perfect sense that the workers' compensation lawyers handle the off-work date to the start date of return to work and the amount of money and the value that that employee gets while she's off to work. We don't want the employer involved in the disputes between doctors and whether or not they can come back to work. We want that settled in the workers' comp. Mr. Malzahl, her lawyer, testified that he has 40 to 50 workers' compensation cases a day. It's a high-volume practice where he gets a percentage of the money that the employees get. There is no way that we would want the responsibility to call the probation department to fall on the assistant state's attorney, who also has 40 or 50 cases a day to handle. So you're saying that the assistant state's attorney's client is the board, not the probation department? It's actually the risk management department of Cook County, yes. And they handle it for all of the county employees. They handle it for the Department of Corrections and the jail guards, for the Cook County clerk's office, the microfilm employees. So the assistant state's attorney would not have the knowledge or the nuance to be able to say, yes, probation employee, you can start on a Wednesday because they're going to give you. So he can't engage or she can't engage in any settlement? Absolutely. So how do you square that with what her lawyer says, that he makes these kind of agreements all the time? And I misspoke. He can engage in settlement for the amount of the value of the TTD benefits, and the amount of the value stops the day before the employee is capable of going back to work. So when Mr. Marzal testified in his deposition that he consistently negotiates the return to work date, that's the end date for the benefits. That's for the amount of money. That does not mean he negotiates the return to work date, that is, call your employer and your personnel. In fact, he testified in his death, this is not a babysitting job that I have. I expect my client to act responsibly when they receive letters from their employers, and if they have questions, to come to me. But this isn't rocket science. That is, a reasonable request from the employer to call and let them know is something that they should be doing, and neither the workers' comp attorney or the state's attorney should be covering that for the employee. So are you saying that sort of scenario A is that the TTD benefits last from date number 1 to date number 2, and the lawyer working that out isn't interested or isn't engaged to worry about whether after date 2, the person goes back to work, or they don't go back to work, or they move to another state, or they do whatever they do? So I'm trying to get a handle on what your distinction is. The workers' compensation, just because they file workers' compensation, the employee does not get a force field or an immunity from having to comply with other regulations of the employer. The best case that just came out of the Seventh Circuit to point was the Phillips case, where the requirement was that before you could file workers' comp, an employee had to take a drug test. The employee could still do his workers' comp, but he still had to take the drug test, and he was fired for not doing so. In this case, the reasonable requirement was when she went on leave, she got the first letter from Rose Golden in June 2010 saying, when you know your return date, please contact me. She gets the second letter from Rose, July 26, 2011, saying, I just learned that you can come back to work. Please show up in a week or let me know why you can't. Contact me. She goes to the county physician on August 1, and the county physician examined her and says, you're ready to work, and hands her a piece of paper that says, contact your personnel director, your employer now, about your return to work date. So she has three written directives saying to contact her employer. She brought that letter, the 26th letter, to her attorney. But her attorney wouldn't answer the question about what he told her with regard to Rose Golden. He claimed attorney-client privilege. He did say in the deposition that he told her the county physician she had to go see, and they weren't kidding about that, but he was silent as to what he advised her. And that's when he said, typically, I leave the return to work date negotiation back to my employee. Okay, but taking the facts in the light favorable to her, though, there's this other track going on where Mr. Marzal is talking to Attorney Schwartz, and they come up with this longer period for the disability benefits. I guess it's temporary total TTD benefits. And one does have a sense that there are conflicting signals going on, and if those benefits are going to go all the way through September the 6th, then why isn't that what drives her return to work capability? If you look at the e-mails between August 10th, when the first e-mail was sent from Mr. Marzal, and August 24th, they're one-sided e-mails. Her doctor says she can come back on September 6th. It never says, is that okay? They're just one-sided e-mails from Anthony Marzal. There's no written response from the ASA saying, yes, that sounds fine, yes, we'll do it. It's not until after the termination in November when the parties sign this agreement. So what about the Grabs case? You know, your opponent is relying very heavily on that, and it does, in fact, refer to failing to call in. That language is in the Illinois Appellate Court decision. Why doesn't that run against you? I think, Your Honor, Grabs, Clark, and the Halliwell, the three state court cases, all have an issue where there is a disputed IME. And there's a disputed IME here, too, right? I mean, the one exam that was done back in December of 2010 says she's ready to go back to work, and her personal physician doesn't think she should be ready. It actually originally says September 3rd, but that's a Saturday, so everybody's having to push it up to the 6th. So why isn't that a dispute? Because the decision-maker who terminated her employment had no idea that there was a dispute. The material facts that were accepted by the district court in their 56.1 statement critically say the only people knew about this disputed IME were the workers' compensation physicians and the risk management person. So, but why? And Dr. Mantelsky. You're talking about kind of a silo situation, though. I mean, if Golden makes sure she never talks to anybody, you know, then she will never know anything. But why isn't knowledge imputed from one part of the county to another? Because the county is too big, frankly, and the workers' compensation is too big, and the administrative burden on the employee is so minimal. She doesn't necessarily have to call. She can send a letter. She could have had her attorney marzal call anyone to put a feeler out. And I want to point out that the Office of the Chief Judge did not terminate her on August 3rd when she failed to show up on August 2nd or August 4th or August 5th. They waited the entire month of August, and they still had heard nothing. It is unfortunate, but we know from Beatty v. Olin, and I think this case is just like Beatty v. Olin that this circuit decided in 2014, the sloppy personnel practices or the fact that the medical department in the Olin case didn't talk to the labor department of the same company was not imputed in that case. Is that fair? Probably not.  It's unfair to impute that kind of knowledge here when she had written directives to do it. And I think the Olin case is controlling despite the fact that plaintiff believes that just because the impetus to get her back into work and the impetus to ask her to contact her employer after 11 months was the IME. There is no evidence in this case that the reason they terminated her employment was this disputed IME. It was clearly because she didn't contact them. And it would be unfair to stretch that bounds to the county for all workers' compensation claims. The other things. So in other words, we rule for plaintiff. You're saying we're opening a Pandora's box on this issue. Absolutely. Because then what the county says in the letter, contact me, really has no real meaning. Absolutely. And as Counsel for the Plaintiff just pointed out, it's not as though Jeremy Schwartz contacted the probation department to say, can she come back at this time. There is no discussion between the ASA and the workers' comp and the probation department. They leave that between the employer and the employee. And that's why. And you're saying we find all of that in the collective bargaining agreement and this Office of the Chief Judge manual? Well, and the Office of the Manual is really not to discriminate, et cetera. It's the collective bargaining agreement. Yes. I think the eight-count complaint filed by the plaintiff is an attempt to try to justify this decision. And it's not for Your Honor or even for us to decide whether this was fair or a prudent decision. The issue is whether we discriminated against her, and we didn't. Not for race, not for her exercise of retaliation, and not for her whistleblowing action. If the Court has no further questions, I urge you to affirm the district court below on all eight counts. Okay. Thank you very much. Thank you very much. I believe your time expired, Mr. Piper, but I'll give you a minute to wrap up, but really just a minute. Well, in a minute I'll just make one point from Grab's. Grab said, we want to make this clear. Employers in Illinois do not fire people for reasons that have to do with their exercise of their comp benefits. So what should the Cook County do? They should do what they do all the time, send a policy memo to every HR person saying, by the way, the Illinois Appellate Court wants it to be clear to you, don't fire people in these circumstances. And then maybe Rose Golden would have done what she should have done, which is call her lawyer. And it is her lawyer, by the way. The way that works is probation delegates the handling of its comp cases to the Cook County Risk Management, which handles them for all of Cook County, including the Office of the Chief Judge. And Risk Management has a lawyer working for them that comes out of the state's attorney's office. So by delegation, it's their lawyer. Thank you very much. Thank you. And thanks to both counsel. We'll take the case under advisement.